Vernon G. PITSKER, Petitioner,

and

Richard C. Rogers, Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT, Respondent.

Nos. 99–3462, 99–3467.

United States Court of Appeals, Federal Circuit.

Dec. 15, 2000.

David U. Fierst, Stein, Mitchell & Mezines, of Washington, DC, argued for petitioners.

Domenique Kirchner, Attorney, Washington, DC, argued for respondent. With her on the brief were David W. Ogden, Assistant Attorney General; David M. Cohen, Director; and Bryant G. Snee, Assistant Director.

Before MAYER, Chief Judge, PLAGER, Senior Circuit Judge,* and RADER, Circuit Judge.

MAYER, Chief Judge.

Vernon G. Pitsker and Richard C. Rogers appeal the final decisions of the Merit Systems Protection Board in Docket No. SF–0831–97–0822–I–1 (Pitsker) and DA–0831–97–0094–R–1 (Rogers). Because the board's decisions were based on an error in the interpretation of the governing statute, we reverse and remand for recalculation of the petitioners' retirement annuities at a higher rate.

### Background

This case presents the question of whether federal law enforcement officers (LEOs) who retire on disability before they reach fifty years of age are entitled to receive annuities computed under 5 U.S.C. § 8339(d)(1) (1994), rather than under 5 U.S.C. § 8339(g) (1994). Pitsker and Rogers are former LEOs who retired on disability before they reached age fifty, and applied to the Office of Personnel Management (OPM) for enhanced disability benefits under 5 U.S.C. § 8339(d)(1).[1] In its

---

* Judge S. Jay Plager assumed senior status on November 30, 2000.

1. 5 U.S.C. § 8339(d)(1) provides in pertinent part:

initial and reconsideration decisions, OPM denied their applications based on its interpretation of the statute that LEOs must be at least fifty years old at the time of separation to receive enhanced disability payments. Pitsker and Rogers appealed to the board.

The board affirmed OPM's decision denying Pitsker the special annuity computation and denied a petition for further review and consideration by the full board. The board initially reversed OPM's decision denying Rogers' application, *see* 77 M.S.P.R. 620 (1998), but it later reversed itself and sustained the decision, *see* 83 M.S.P.R. 154 (1999). The board deferred to OPM's "reasonable" interpretation of 5 U.S.C. §§ 8337(a) and 8339(d). *Id.* at 165–66. It noted that section 8337(a) says that a disability retirement annuity is computed under section 8339(g), *"unless the employee or Member is eligible for* a higher annuity computed under section 8339(a)-(e), (n) or (q)." 5 U.S.C. § 8337(a) (1994) (emphasis added). The board held that the commonly understood meaning of "is eligible for" is "meets the qualifications for," and that the statute restricts eligibility for enhanced disability payments to those LEOs who meet the minimum age and service requirements for immediate retirement under 5 U.S.C. § 8336(c), fifty years of age with twenty years of service. 83 M.S.P.R. at 162–63.

Rogers' and Pitsker's petitions for review were consolidated here. They argue that the board erred because OPM's interpretation is unreasonable and contrary to legislative intent. They assert that "[t]he genesis of OPM's error is the erroneous belief that the phrase 'eligible for a higher annuity' as used in 5 U.S.C. § 8337(a) to designate the disabled employees who should receive enhanced disability benefits is synonymous with 'entitled to an annuity' in § 8336(c) to designate retirees who

should receive enhanced retirement benefits." They argue that courts recognize that "eligible," as used in other federal statutes, means member of a class, but not necessarily full compliance with all criteria; thus, OPM's interpretation of "eligible" is contrary to commonly accepted statutory interpretation.

Rogers and Pitsker also argue that an LEO who has twenty years of service and reaches fifty years of age would never choose a disability retirement because it places certain restrictions on him, such as annual physicals and a limitation on earnings. They emphasize that as LEOs, they were required to contribute a larger amount toward their retirement than other government employees, which they never will be able to recover as other LEOs do through enhanced retirement benefits. They infer that Congress must have intended LEOs to have a higher level of benefits than other federal employees if they become disabled. OPM responds that if this was Congress' intent, it could have said so by referencing section 8339(d) in section 8339(g), just as it provided for an enhanced annuity computation for the LEOs of the legislative branch by referencing section 8339(q).

## Discussion

■■■ Under our statutory standard of review of a decision of the board, we are required to affirm unless the petitioner proves that the decision is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without adherence to procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (1994); *see Hayes v. Dep't of the Navy,* 727 F.2d 1535 (Fed.Cir.1984). Judicial review of federal disability determinations is limit-

The annuity of an employee retiring under section 8335(b) or 8336(c) of this title is—
(A) 2 ½ percent of his average pay multiplied by so much of his total service as does not exceed 20 years; plus

(B) 2 percent of his average pay multiplied by so much of his total service as exceeds 20 years.

ed to determining whether "there has been a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error 'going to the heart of the administrative determination.'" *Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 791, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985) (quoting *Scroggins v. United States*, 184 Ct.Cl. 530, 397 F.2d 295, 297 (1968)). "We review this decision to determine whether the agency misconstrued the governing legislation." *Balick v. Office of Personnel Mgmt.*, 85 F.3d 586, 588 (Fed.Cir.1996). Statutory interpretation is a question of law which we review *de novo*. *See Rosete v. Office of Personnel Mgmt.*, 48 F.3d 514, 517 (Fed. Cir.1995).

A court does not fulfill its duty to "say what the law is" by merely agreeing to an agency's interpretation of the statutory provision at issue if it is "reasonable." *See Timex V.I., Inc. v. United States*, 157 F.3d 879, 881 (Fed.Cir.1998) (citing *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803)). "[W]e must first carefully investigate the matter to determine whether Congress's purpose and intent on the question at issue is judicially ascertainable." *Id.* (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Chevron*, 467 U.S. at 843 n. 9, 104 S.Ct. 2778; *see also Skinner v. Brown*, 27 F.3d 1571, 1572 (Fed.Cir.1994). "All statutes must be construed in the light of their purpose." *Haggar Co. v. Helvering*, 308 U.S. 389, 394, 60 S.Ct. 337, 84 L.Ed. 340 (1940).

"To discern Congress' intent we examine the explicit statutory language and the structure and purpose of the statute." *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 138, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). Thus, we must "find that interpre-

tation which can most fairly be said to be imbedded in the statute, in the sense of being most harmonious with its scheme and with the general purposes that Congress manifested." *NLRB v. Lion Oil Co.*, 352 U.S. 282, 297, 77 S.Ct. 330, 1 L.Ed.2d 331 (1957). "[W]e look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." *Crandon v. United States*, 494 U.S. 152, 158, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990).

Retirement for federal employees, including LEOs, is provided for under 5 U.S.C. § 8336 for "Immediate retirement," section 8335 for "Mandatory separation," and section 8337 for "Disability retirement." The annuity calculations for retiring employees are provided for under 5 U.S.C. § 8339.

OPM interprets section 8337(a) as providing an increased annuity for LEOs only if the employee satisfies the minimum age and service requirements for immediate retirement under 5 U.S.C. § 8336(c). In other words, OPM would require that disabled LEOs retiring on disability under section 8337(a) satisfy the retirement-specific requirements of both section 8337(a) for disability retirement and section 8336(c) for immediate retirement to receive an enhanced annuity under section 8339(d)(1). While OPM's interpretation may make sense on its face, a careful reading of the statute and its attendant history reveals a different meaning.

The structure of the statute is complex, with sections relating to disability benefits interspersed among and cross-referenced to the sections relating to retirement and survivor benefits. While federal employees are generally entitled to a retirement annuity at age fifty-five after thirty years of service or at age sixty after twenty years of service, *see* 5 U.S.C. § 8336(a) and (b), LEOs are entitled to a retirement annuity at age fifty after twenty years of service, *see id.* § 8336(c). Not only are LEOs entitled to retire at an earlier age, the benefits are more generous than for

other federal employees. *Compare* section 8339(a) *with* section 8339(d). To fund these more generous benefits, Congress requires that a higher percentage of an LEO's salary be withheld. Most federal employees pay seven percent of their salary into the federal benefits fund, but LEOs pay seven and a half percent. *See* 5 U.S.C. § 8334(c) (1994). OPM's regulations provide that this additional withholding is not refundable in the event the LEO does not receive enhanced disability benefits. *See* 5 C.F.R. § 831.907(d) (1999); *Rogers*, 83 M.S.P.R. at 161.

Congress passed the preferential retirement provisions to make the federal law enforcement corps a career service composed of young men and women capable of meeting the stringent physical requirements of law enforcement and performing at peak efficiency. *See Felzien v. Office of Pers. Mgmt.*, 930 F.2d 898, 901 (Fed.Cir. 1991); *see also Johnson v. Mayor and City Council of Baltimore*, 472 U.S. 353, 364–65, 105 S.Ct. 2717, 86 L.Ed.2d 286 (1985); S. Rep. No. 948, 93d Cong., 2d Sess. 2 (1974), *reprinted in* 1974 U.S.C.C.A.N. 3698, 3699 ("This intent has been based on the nature of the work involved and the determination that these occupations should be composed, insofar as possible, of young men and women physically capable of meeting the vigorous demands of occupations which are far more taxing physically than most in the Federal Service."). Enhanced benefits recognize the greater physical demands and dangers of law enforcement.

There are three bases provided by statute for retirement of an LEO. Immediate retirement under section 8336(c) requires fifty years of age and twenty years of service. Mandatory separation under section 8335(b) requires LEOs otherwise eligible for retirement under section 8336 to retire, subject to exceptions, after fifty-seven years of age or completing twenty years of service if then over that age. Section 8337(a) provides that an employee, including an LEO, with five years of service can be retired on disability retirement.

Section 8337(a) entitles LEOs to enhanced disability benefits if the benefits calculated under section 8339(d) are greater than the benefits calculated under section 8339(g). This provision clearly indicates that section 8339(g) is not the exclusive computational criteria for certain specified disability retirees. Subsection (a) requires only that the employee be "eligible for a higher annuity." 5 U.S.C. § 8337(a) (1994). OPM's interpretation would superimpose the requirement of section 8336(c) that the candidate be eligible for immediate retirement in order to receive an enhanced annuity under section 8339(d)(1). But the statutory language carries no such requirement. Section 8339 does not impose different criteria for retirement, but only describes how annuities are calculated. *See Wassenaar v. Office of Pers. Mgmt.*, 21 F.3d 1090, 1097 (Fed.Cir.1994). The phrase "computed under" in section 8337(a) requires section 8339(d) to be used for calculation only, without regard to section 8339(d)'s cross-references to other eligibility sections. We have previously "reject[ed] the notion that Congress intended that the retirement-specific requirements in any subsection of section 8339 should be given effect when calculating a survivor annuity." *Wassenaar*, 21 F.3d at 1096. For example, the surviving spouse of a deceased LEO is entitled to enhanced benefits even though the employee is not "retiring under" section 8336(c) or section 8335(b). Similarly, a disabled LEO cannot "retire under" section 8336(c) or section 8335(b). If the "retiring under" language of section 8339(d) is imposed, then no LEO would ever receive enhanced disability benefits and any reference to section 8339(d) in section 8337(a) would be rendered a nullity.

The history of section 8337 lends further support. Title 5 of the United States Code was codified in 1966 by Public Law Number 98–554. The original provision for dis-

ability retirement under 5 U.S.C. § 8337(a) (1966) provided that "[a]n annuity authorized by this section is computed under section 8339 of this title." In other words, under the original disability retirement provisions of title 5, annuities for federal employees retiring due to disability were generally calculated under the same annuity calculation provisions as annuities for regularly retiring federal employees.

Section 8339(a) of title 5 in 1966 provided an annuity calculation for all regular federal employees identical to the current section 8339(a). Likewise, section 8339(d) in 1966 provided an annuity calculation for LEOs of two percent of average pay multiplied by the total years of a LEO's service, similar to the current section 8339(d). Additionally, section 8339 of title 5 in 1966 provided a minimum annuity calculation for employees taking disability retirement under section 8337. That was codified as 5 U.S.C. § 8339(f) and, similar to the current section 8339(g), provided:

> The annuity of an employee or Member retiring under section 8337 of this title is at least the smaller of—
>
> (1) 40 percent of his average pay; or
>
> (2) the sum obtained under subsections (a)-(c) of this section after increasing his service of the type last performed by the period elapsing between the date of separation and the date he becomes 60 years of age.

Thus, under title 5 in 1966, a federal employee retiring on disability would receive an annuity that was at least the amount specified in section 8339(f), or the amount calculated under any other subpart of section 8339 the employee would have been entitled to upon regular retirement if that amount was higher.

In 1980, 5 U.S.C. § 8337(a) was amended to change the eligibility criteria for disability retirement in ways not relevant to the present case. However, along with this substantive amendment, the wording of the last sentence of section 8337(a) was also changed. The amended language, similar to the current disputed section

8337(a), provided that "[a]n annuity authorized by this section is computed under section 8339(g) of this title, unless the employee or Member is eligible for a higher annuity computed under section 8339(a)-(e) or (n)." Pub.L. No. 96–499, 94 Stat. 2599, 2606 (1980).

The legislative history of Public Law Number 96–499 explained that "[t]he annuity of an employee who retires on disability is calculated under the same general formula that is applicable to most other retirees. However, a disability retiree is guaranteed a minimum annuity equal to the lesser of" the two calculations outlined in section 8339(g). H. Rep. No. 96–937, at 206 (1980). Thus, although the wording of section 8337(a) changed in 1980 to the disputed "is eligible for" language, Congress intended disability retirement annuities to be calculated the same way they had been before the amendment.

■ In *Christensen v. Harris County*, 529 U.S. 576, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000), the Supreme Court held that informal agency interpretations of statutes such as those contained in opinion letters, policy statements, agency manuals, and enforcement guidelines "do not warrant *Chevron*-style deference." *Id.* at 1662. Because OPM's informal interpretation of the statute is unpersuasive, we decline to adopt it. *See id.* at 1663 (informal interpretations of a statute by an agency charged with enforcing it are "entitled to respect," "but only to the extent that those interpretations have the 'power to persuade' ") (citation omitted).

■ OPM's requirement also violates the canon of statutory construction that an interpretation that causes absurd results is to be avoided if at all possible. *See Haggar*, 308 U.S. at 394, 60 S.Ct. 337 (A reading of a statute that "would lead to absurd results is to be avoided when [it] can be given a reasonable application consistent with [its] words and with the legislative purpose."); *see also Best Power Tech. Sales Corp. v. Austin*, 984 F.2d 1172,

1175–76 (Fed.Cir.1993). Under OPM's interpretation, no LEO would ever receive enhanced disability benefits. This cannot be rationalized with the language, purpose and legislative history of section 8337(a).

■ All federal employees, including LEOs, who retire under the disability retirement provisions of 5 U.S.C. § 8337(a), therefore, are entitled to the higher of the "guaranteed minimum" annuity calculation under 5 U.S.C. § 8339(g), or the annuity calculation under the appropriate section of title 5 for which they would have been entitled had they reached normal retirement age. Thus, LEOs retiring on disability are entitled to an annuity calculation under 5 U.S.C. § 8337(d)(1) if such calculation results in a higher annuity than the calculation under section 8339(g). The board erred in concluding that the petitioners must be at least fifty years old at the time of their separation to receive enhanced disability benefits.

### Conclusion

Accordingly, the decision of the board is reversed, and the case is remanded for further proceedings consistent with this opinion.

### COSTS

Petitioners shall have their costs.

*REVERSED AND REMANDED.*