# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued May 6, 2005          Decided July 26, 2005

No. 04-5297

CARMINE FORNARO, JR., ET AL.,
APPELLANTS

v.

KAY COLES JAMES, DIRECTOR, OFFICE OF PERSONNEL
MANAGEMENT,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 01cv02542)

———

*David U. Fierst* argued the cause for appellants. With him
on the briefs were *Glenn A. Mitchell* and *Gary S. Marx.*

*Lisa S. Goldfluss*, Assistant U.S. Attorney, argued the cause
for appellee. With her on the brief were *Kenneth L. Wainstein*,
U.S. Attorney, and *Michael J. Ryan*, Assistant U.S. Attorney. *R.
Craig Lawrence*, Assistant U.S. Attorney, entered an
appearance.

Before: GINSBURG, *Chief Judge*, and ROGERS and ROBERTS,
*Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROBERTS.

ROBERTS, *Circuit Judge*: A group of eight plaintiffs seeking to represent a class of retired, disabled federal law enforcement officers and firefighters sued the Office of Personnel Management. They claimed that class members were entitled to higher disability benefits, based on recent decisions from the Court of Appeals for the Federal Circuit, and sought an order requiring OPM to notify class members and pay them the higher benefits. The plaintiffs looked to the Administrative Procedure Act for the waiver of sovereign immunity that would allow their suit to proceed in district court, but we hold that the APA's waiver is inapplicable because Congress has prescribed a route other than suit under the APA for vindicating claims for civil service benefits. We affirm the judgment dismissing the action for lack of jurisdiction.

**I.**

The Civil Service Retirement Act, codified at 5 U.S.C. §§ 8331 *et seq.*, provides for payment of annuities to retired federal employees and their surviving spouses. Congress has entrusted the administration of this system to the Office of Personnel Management. *Id.* § 8347(a). The CSRA provides that OPM "shall adjudicate all claims" for retirement benefits, *id.* § 8347(b), and sets forth a detailed regime for reviewing those decisions. The CSRA first allows a claimant to appeal an adverse OPM decision to the Merit Systems Protection Board. *Id.* § 8347(d)(1). Claimants can then seek judicial review of MSPB final orders and decisions, but — except for certain discrimination claims — must do so before the Court of Appeals for the Federal Circuit. *Id.* § 7703(b)(1).

Pursuant to the CSRA, federal law enforcement officers and firefighters (LEO/FFs), and their surviving spouses, are generally entitled to a more generous retirement annuity than that received by other civil service employees. *See id.* §§ 8336(c), 8339(d). Receiving the larger annuity, however, is contingent on working

past age fifty and having more than twenty years of service, *id.* § 8336(c), and LEO/FFs who retire before either threshold are entitled only to the standard civil service pension, *see id.* § 8339(g). The CSRA also provides annuities for employees who become disabled or for the surviving spouses of employees who die while still employed. *See id.* §§ 8337, 8341. The difficult question of statutory interpretation at the root of the present dispute is whether LEO/FFs who fail to meet the age fifty or twenty years of service requirements because of death or disability are nonetheless entitled to the larger annuity. *See generally Wassenaar v. OPM*, 21 F.3d 1090, 1092–94 (Fed. Cir. 1994).

The dispute between OPM and LEO/FFs over how to resolve this question has been going on for some time. Round one concerned whether death before meeting the age and service thresholds prevented LEO/FF survivors from receiving an enhanced annuity. OPM initially took the position that it did. In response, surviving spouses of LEO/FFs who died before satisfying the requirements for the larger annuity challenged OPM's interpretation through the CSRA review process, taking their case to the MSPB and the Federal Circuit. The Federal Circuit held that neither death before age fifty, *Wassenaar*, 21 F.3d at 1097, nor death before twenty years of service, nor both, *Moore v. OPM*, 113 F.3d 216, 218 (Fed. Cir. 1997), deprived surviving spouses of the enhanced annuity.

Subsequent to these decisions, OPM paid enhanced benefits to the complaining parties in *Wassenaar* and *Moore*, and also agreed to pay enhanced benefits to surviving spouses of any future LEO/FFs who died before meeting either or both of the minimum thresholds. With respect to similarly situated LEO/FF survivors who were already receiving reduced benefits but had not been parties to the litigation, however, OPM would only pay an increased annuity to those who filed a claim for one after the

decisions. A class of plaintiffs then sought to compel OPM to notify current annuitants unaware of the new interpretation in *Wassenaar* and *Moore*, filing suit in the District Court for the District of Columbia. *See Anselmo v. King*, 902 F. Supp. 273 (D.D.C. 1995). After several years of inconclusive litigation there, OPM agreed to seek out current annuitants and pay them adjusted prospective and retroactive benefits in line with the *Wassenaar* and *Moore* decisions.

The present appeal concerns the impact of disability rather than death on entitlement to an enhanced annuity. The Federal Circuit recently ruled, in a case brought through the CSRA review process, that LEO/FFs younger than fifty are entitled to enhanced benefits if they retire early because of disability, but did so without addressing whether the same held for those retiring because of disability without twenty years of service. *See Pitsker v. OPM*, 234 F.3d 1378, 1381–84 (Fed. Cir. 2000). OPM paid enhanced benefits to the named parties in *Pitsker* but, following the same course it had pursued in the survivor litigation, would not do so for other similarly situated annuitants unless they came forward and filed a claim. OPM also took the position that retirees who did not have twenty years of service were not covered by the *Pitsker* ruling and were still ineligible for an enhanced annuity. A group of LEO/FFs who had retired because of disability before age fifty *and* with less than twenty years' experience filed the present class action suit on December 10, 2001 in the District Court for the District of Columbia, seeking mandamus and declaratory relief compelling OPM to notify class members and grant them enhanced retirement benefits.

OPM moved to dismiss for lack of jurisdiction and failure to state a claim. On October 31, 2002, the parties stipulated that OPM would notify and begin paying retroactive and prospective enhanced benefits to LEO/FFs who retired on disability after

serving twenty years, but before the age of fifty — the cohort to which *Pitsker* directly applied. *See* Stipulation and Order, ¶ 2. Then, on June 6, 2004, the district court granted OPM's motion to dismiss for lack of jurisdiction. The court held that the APA did not waive sovereign immunity with respect to the action because the relief the plaintiffs sought — notifying annuitants of their rights or applying *Pitsker* to those without twenty years of service — was within the discretion of the agency. Alternatively, the court held that the plaintiffs' civil action was time-barred under 28 U.S.C. § 2401(a), because the harm triggering the cause of action — the initial miscalculation of benefits — occurred more than six years before filing the complaint. The plaintiffs appeal.

## II.

The United States, as sovereign, "is immune from suit save as it consents to be sued, and the terms of consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (citations omitted). Plaintiffs rely on the waiver of sovereign immunity in the APA, which does indeed provide that "[a]n action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity . . . shall not be dismissed nor relief therein be denied on the ground that it is against the United States." 5 U.S.C. § 702. Section 702 goes on, however, to specify that "[n]othing herein . . . confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Id.*

As we explained in *Transohio Savings Bank v. OTS*, 967 F.2d 598, 607 (D.C. Cir. 1993), "[t]he APA excludes from its waiver of sovereign immunity . . . claims for which an adequate remedy is available elsewhere, and . . . claims seeking relief

expressly or impliedly forbidden by another statute." *See also Sprecher v. Graber*, 716 F.2d 968, 974 (2d Cir. 1983) ("The legislation establishing the authority of [modern regulatory] agencies usually defines the scope of judicial review over their actions and sovereign immunity will generally continue to bar other kinds of lawsuits against them as a consequence of the proviso to Section 702.").

The CSRA specifies the benefits to which federal employees and their survivors are entitled, and provides a reticulated remedial regime for beneficiaries to secure review — including judicial review — of benefits determinations. That regime provides for adjudication of all claims by OPM, 5 U.S.C. § 8347(b), appeal of adverse decisions by OPM to the MSPB, *id.* § 8347(d)(1), and subsequent review of MSPB decisions in the Federal Circuit, *id.* § 7703(b)(1); 28 U.S.C. § 1295(a)(9). A series of opinions from the Supreme Court and this court make clear that these remedial provisions are exclusive, and may not be supplemented by the recognition of additional rights to judicial review having their sources outside the CSRA.

In *Lindahl v. OPM*, 470 U.S. 768 (1985), for example, the Court confirmed that, under the CSRA, MSPB decisions concerning retirement disability claims were reviewable in the Federal Circuit, rejecting an effort to challenge an MSPB decision through an action in the Claims Court. *Id.* at 798–99. As the Supreme Court explained in *United States v. Fausto*, 484 U.S. 439 (1988), Congress sought in the CSRA "to replace the haphazard arrangements for administrative and judicial review of personnel action," review that often involved appeal of agency decisions "to the district courts through . . . various forms of action . . ., including suits for mandamus, injunction, and declaratory judgment." *Id.* at 444 (citations omitted). To remedy "the wide variations in the kinds of decisions . . . issued on the same and similar matters which were the product of

concurrent jurisdiction . . . of the district courts in all Circuits and the Court of Claims," *id.* at 445 (citation omitted), Congress created in the CSRA a remedial structure that "avoids an unnecessary layer of judicial review in lower federal courts, and [e]ncourages more consistent judicial decisions . . . ." *Id.* at 449 (citations omitted). These considerations helped lead the Court in *Fausto* to hold that an employee could not sue in the Court of Claims under the Back Pay Act to remedy an adverse personnel action, when the CSRA regime did not provide administrative or judicial review for the claim at issue. *Id.* at 455. *See also Bush v. Lucas*, 462 U.S. 367, 388, 390 (1983) (noting "comprehensive nature" of civil service remedies and the "elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations," and declining to "augment[]" system "by the creation of a new judicial remedy").

Our cases have also recognized, in a variety of contexts, the exclusivity of the remedial and review provisions of the CSRA. We early on held that the CSRA review provisions could not be supplemented by an implied private right of action, *see Cutts v. Fowler*, 692 F.2d 138, 140–41 (D.C. Cir. 1982); *Borrell v. United States Int'l Communications Agency*, 682 F.2d 981, 987 (D.C. Cir. 1982), and concluded in *Carducci v. Regan*, 714 F.2d 171, 174–75 (D.C. Cir. 1983), that no remedy was available under the APA for an employment claim as to which the CSRA provided no relief. As we explained, the "failure to include" any relief "within the remedial scheme of so comprehensive a piece of legislation reflects a congressional intent that no judicial relief be available." *Id.* at 174.

In *Spagnola v. Mathis*, 859 F.2d 223 (D.C. Cir. 1988) (en banc), we ruled that the CSRA precluded a *Bivens* remedy for adverse personnel decisions, explaining that "it is the comprehensiveness of the statutory scheme involved, not the 'adequacy' of specific remedies thereunder, that counsels judicial absten-

tion." *Id.* at 227; *see also Harrison v. Bowen*, 815 F.2d 1505, 1516 n.25 (D.C. Cir. 1987) (CSRA "creates an extensive scheme regulating civil service personnel decisions" and courts should not "allow an employee to circumvent this detailed scheme governing federal employer-employee relations by suing under the more general APA.") (quoting *Broadway v. Block*, 694 F.2d 979, 986 (5th Cir. 1982)). Most recently, in *Graham v. Ashcroft*, 358 F.3d 931 (D.C. Cir. 2004), we held that the remedies under the CSRA could not be supplemented by so-called "*Vitarelli* actions" in district court — suits claiming that, in taking adverse personnel action, an agency had violated its own regulations. *Id.* at 933–36. *See Vitarelli v. Seaton*, 359 U.S. 535, 539–40 (1959). In sum, so far as review of determinations under the CSRA is concerned, what you get under the CSRA is what you get.

The plaintiffs do not dispute this point. Instead, they argue that the CSRA regime's exclusivity for individual benefits determinations does not preclude what they contend is a collateral, systemwide challenge to OPM policy. The plaintiffs rely heavily on *Bowen v. City of New York*, 476 U.S. 467 (1986), which held that a district court could hear a challenge to a Social Security Administration policy effectively denying claimants' benefits despite the fact that some claimants in the class had not exhausted the administrative remedies prescribed by the review statute. The plaintiffs here contend that they too are challenging the legality of a "systemwide . . . policy" in a manner "entirely collateral to a substantive claim to entitlement," *Bowen*, 476 U.S. at 485, 483, and therefore need not be relegated to the remedies set forth in the CSRA for individual claims.

*Bowen*, of course, did not address the CSRA and its exclusive remedial scheme. In *Bowen*, moreover, there was no dispute that the district court had jurisdiction to review properly exhausted SSA claims. That a court can "waive" application of the "intensely practical" doctrine of administrative exhaustion in

the context of systemwide challenges, *id.* at 484, is beside the point when, as here, the court would not have been able to take jurisdiction over the claims in any event. Unlike those in *Bowen*, the benefits claims at issue here were not eventually headed to the district court at some point anyway, but could only be brought before OPM, with review before the MSPB and the Federal Circuit. Allowing an alternative route to relief in the district court because plaintiffs frame their suit as a systemwide challenge to OPM policy would substitute an entirely different remedial regime for the one Congress intended to be exclusive, rather than, as in *Bowen*, simply alter the timing of the congressionally mandated judicial review.

The plaintiffs also rely on *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479 (1991), which allowed a district court suit challenging agency practices and policies in processing certain applications, even though review of denial of the applications was not available in district court. In *McNary*, however, the Court emphasized that a victory for the plaintiffs in their district court action would not "have the practical effect of also deciding their claims for benefits on the merits." *Id.* at 495. Instead, if those plaintiffs prevailed, they "would only be entitled to have their case files reopened and their applications reconsidered in light" of the new requirements. *Id.* (distinguishing *Heckler v. Ringer*, 466 U.S. 602 (1984)). In short, the statutorily mandated administrative process did not address the sort of procedural and constitutional claims the *McNary* plaintiffs sought to bring in district court, and so did not preclude them. *Id.* at 493. Here there is a far closer connection between the relief sought in the judicial action and that available in the administrative process. The district court action seeks benefits according to a particular understanding of the reach of the *Pitsker* decision; that same claim can be pressed in an individual benefits claim before OPM, the MSPB, and — if necessary — the Federal Circuit. It is hard to see how a district court's decision to apply *Pitsker* as

interpreted by the plaintiffs and ordering OPM to pay benefits accordingly would do anything besides decide the merits of the plaintiffs' claims for benefits.

Allowing district court actions challenging how OPM calculates civil service benefits for particular classes of beneficiaries would plainly undermine the whole point of channeling review of benefits determinations to the MSPB and from there to the Federal Circuit. Such an approach would reintroduce "the haphazard arrangements for administrative and judicial review of personnel action," involving resort "to the district courts . . . through various forms of action . . ., including suits for mandamus, injunction, and declaratory judgment," that Congress sought to replace in the CSRA. *Fausto*, 484 U.S. at 444 (citations omitted). It would erode "the primacy of the MSPB for administrative resolution of disputes . . . and the primacy of the Federal Circuit for judicial review." *Id.* at 449. Allowing the present action to proceed would also impermissibly create a right of "access to the courts more immediate and direct than the [CSRA] provides," *Carducci*, 714 F.2d at 174, thus fracturing "the unifying authority . . . of the MSPB," and "undermining the consistency of interpretation by the Federal Circuit envisioned" by the Act, *Fausto*, 484 U.S. at 451. Nothing about the fact that plaintiffs' action is a systemic challenge to OPM policy mitigates this impact.

### III.

It remains to consider whether the district court could have exercised mandamus jurisdiction. No separate waiver of sovereign immunity is required to seek a writ of mandamus to compel an official to perform a duty required in his official capacity. *Wash. Legal Found. v. U.S. Sentencing Comm'n*, 89 F.3d 897, 901 (D.C. Cir. 1996) (citing *Dugan v. Rank*, 372 U.S. 609, 621–22 (1963); *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689 (1949)).

Mandamus is a "drastic" remedy, "to be invoked only in extraordinary circumstances." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980). "Mandamus is available only if: (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002) (internal quotation marks omitted). Because the plaintiffs do not now contend that OPM has a duty to notify annuitants about any enhanced benefits that may be enforced through mandamus, *see* Recording of Oral Arg. at 11:55–12:10; 13:00–13:05, the sole issue here is whether mandamus is available to compel OPM to pay all annuitants enhanced benefits owed under *Pitsker*. There is no dispute that each of the plaintiffs and members of the putative class could file a claim for increased benefits with OPM, appeal any adverse decision to the MSPB, and seek further review before the Federal Circuit. This is true regardless of whether a claim would be time-barred in a civil action, for any such bar under 28 U.S.C. § 2401(a) would not apply to claims pursued administratively. *See Oppenheim v. Campbell*, 571 F.2d 660, 663 (D.C. Cir. 1978) (28 U.S.C. § 2401(a) does not apply to civil service retirement claims brought, prior to the enactment of the CSRA, pursuant to the APA).

The plaintiffs contend that the CSRA as administered only allows class certification of MSPB appeals — as opposed to OPM claims — and that many potential claimants may not know of the rights asserted under *Pitsker*. Yet however unsatisfactory the CSRA's approach may appear to the plaintiffs, the fact that a remedial scheme chosen by Congress vindicates rights less efficiently than a collective action does not render the CSRA remedies inadequate for purposes of mandamus. *See Council of & for the Blind of Delaware County Valley, Inc. v. Regan*, 709 F.2d 1521, 1532 (D.C. Cir. 1983) (en banc) ("Even if we agreed that one nationwide suit would be *more effective* than several . . .

suits, that does not mean that the remedy provided by Congress is *inadequate*"). Because the CSRA regime affords beneficiaries an adequate remedy with respect to claims for an enhanced annuity, there is no jurisdiction to issue the writ. *See Barnhart v. Devine*, 771 F.2d 1515, 1524, 1527 (D.C. Cir. 1985) ("It is, of course, elementary that mandamus is an extraordinary form of relief which lies only when no adequate alternative remedy exists;" finding mandamus precluded by adequate remedy under the CSRA).

The judgment of the district court is

*Affirmed*.