## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 31 2020, 8:58 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

William O. Harrington
Harrington Law, P.C.
Danville, Indiana

ATTORNEY FOR APPELLEE

Denise F. Hayden
Lacy Law Office, LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Pamela Anne Langguth,

*Appellant-Respondent,*

v.

Michael Langguth,

*Appellee-Movant*

August 31, 2020

Court of Appeals Case No.
20A-DC-441

Appeal from the Hendricks
Superior Court

The Honorable Robert W. Freese,
Judge

Trial Court Cause No.
32D01-1803-DC-164

**Baker, Senior Judge.**

[1]     Pamela Langguth appeals the trial court's order granting Michael Langguth's motion to set aside a 2009 court order acceptable for processing that was tied to the decree of dissolution of their marriage. Pamela argues that (1) the trial court did not have subject matter jurisdiction to consider Michael's motion; (2) the trial court erred by granting the motion absent any evidence of fraud; and (3) the trial court erred by finding implicitly that Michael met his burden under Trial Rule 60(B). Finding that the trial court had subject matter jurisdiction and finding no error, we affirm.

## Facts

[2]     On September 26, 2007, the trial court entered a decree of dissolution of marriage between Pamela and Michael; it later entered an amended decree following Michael's motion to correct errors. During and after the parties' marriage, Michael was employed as an air traffic controller for the FAA. Part of his compensation was a retirement pension.

[3]     In the amended dissolution decree, the trial court held that Michael's FAA pension was a marital asset but that the parties did not, at that time, know the value of the pension. The trial court ordered that Pamela would receive "80% of [Michael's] pension as of 12/31/06[.]"[1] Tr. Ex. Vol. p. 56. On February 9,

---

[1] There was some debate over the course of proceedings as to the correct date of calculation. In the end, the parties agreed that the correct date was December 31, 2005, rather than 2006.

2009, the trial court entered a court order acceptable for processing (COAP).[2] In the COAP, which was an order directed to the United States Office of Personnel Management (OPM), the trial court ordered as follows:

[Pamela] is entitled to and is hereby assigned and awarded the amount of *Eighty Percent (80%) of [Michael's] gross monthly annuity as of December 31, 2005*, under the Federal Employee's Retirement System (FERS). The [OPM] is directed to pay [Pamela's] share directly to [Pamela]. [Pamela] shall receive a pro-rata share (Eighty Percent (80%)) of any Cost of Living Adjustment as well as any other increases in [Michael's] gross monthly annuity.

*Id.* at 67 (emphasis original).

[4] In June 2017, Michael retired as an air traffic controller. On November 28, 2017, OPM sent a letter to Pamela explaining the calculation of their respective shares of Michael's FERS benefit:

By court order your marital share of your former spouse's retirement benefit is 80% of 199 months of service during the marriage divided by 337 months of Federal service or 47.24% of your former spouse's retirement benefit. The marital shares times your former spouse's gross annuity benefit of $7,180 provides for a $3,391.83 monthly payment for you. *This includes the FERS Supplement of $1377; which may end at any time reducing your share of your former spouse's retirement annuity.*

*Id.* at 72 (emphasis original).

---

[2] The term "court order acceptable for processing," used by the United States Office of Personnel Management, is essentially synonymous with what is more commonly referred to in Indiana as a qualified domestic relations order (QDRO).

[5]     On July 11, 2018, Michael filed a motion to set aside the COAP and a motion to stay the distributions to Pamela. On March 29, 2019, following a hearing, the trial court entered an order holding, in relevant part, as follows:

> 1.     The Court has jurisdiction over the parties and the issues presented . . . .
>
> ***
>
> 6.     Clearly the Judge at [the time of the amended dissolution decree] intended to award Wife 80% (with a couple of exceptions) of the *MARITAL ASSETS* to Wife.
>
> 7.     The Court did not and could not intend or order that Wife receive assets acquired by Husband after the marriage ended.
>
> 8.     The current division of Husband's retirement provides a substantial windfall for Wife in that she is receiving payment for pension accrual that occurred over a period of time in excess of a decade after the marriage was dissolved. Thus, providing to her post-marital assets that were not a result of the marriage in any manner.
>
> 9.     The Court therefore sets asides and vacates the [COAP] dated February 9, 2009.

First Appealed Order p. 2-3 (emphasis original). The trial court held another hearing on December 17, 2019, to determine the correct monthly amount owed to Pamela. On January 28, 2020, the trial court issued an order following that hearing that holds, in relevant part, as follows:

13. [An expert who testified at the hearing] was able to establish that [Michael] was entitled, on December 31, 2005, to receive a gross monthly annuity, through FERS, of $1,735.

14. [Pamela] should therefore be entitled to 80% of $1,735, per month, which equals $1,388.

***

16. [Pamela] is currently receiving 80% of [Michael's] FERS supplement.

17. [Pamela] was not entitled to the FERS supplement on December 31, 2005.

18. There was no mention of the FERS supplement in the Decree or Amended Decree.

19. [Pamela] should not receive a portion of [Michael's] FERS supplement as it was not vested at the time of dissolution.

20. Counsel for [Michael] shall prepare a [COAP] that directs the [OPM] to award and assign [Pamela] the gross monthly amount of $1,388. Further, the [COAP] shall specifically exclude [Michael's] FERS supplement from division.

21. A revised [COAP] does not constitute a review of the OPM calculation.

22. OPM cannot, under its Rules and Regulations, calculate 80% of [Michael's] gross monthly annuity as of December 31, 2005.

23. Absent a revised [COAP], awarding [Pamela] 80% of [Michael's] gross monthly annuity as of December 31, 2005 is an impossibility.

24. The terms of the Order carry out the intent of the original Decree and Amended Decree and provide an equitable resolution.

Second Appealed Order p. 2-3. Pamela now appeals.

# Discussion and Decision

[6] At the outset, we note that while Pamela raises multiple procedural arguments herein, she does not make any substantive ones. In other words, she does not argue that she was *actually entitled*, under the amended decree, to 80% of Michael's retirement benefits that accrued after the marriage was dissolved. Nor does she contest the trial court's conclusion that, absent a clarified COAP, she is receiving a windfall.

[7] Instead, she argues as follows: (1) the trial court did not have subject matter jurisdiction to consider Michael's motion to set aside; (2) the trial court's modification of the 2009 COAP was erroneous because there was no evidence of fraud; and (3) the trial court erred by concluding that Michael met his burden under Trial Rule 60(B) to show grounds for relief from judgment.

# I. Subject Matter Jurisdiction

Pamela contends that the trial court lacked subject matter jurisdiction. When, as here, there are no disputed issues of fact, we apply a de novo standard of review to the issue of the trial court's subject matter jurisdiction. *Johnson v. Patriotic Fireworks, Inc.*, 871 N.E.2d 989, 992 (Ind. Ct. App. 2007).

In arguing that the trial court lacked subject matter jurisdiction to consider Michael's motions, Pamela frames Michael's argument as an attack on the OPM's calculation of the amount to which she is entitled. If this were, indeed, what Michael was arguing, Pamela would be correct. To appeal an OPM calculation, a claimant must exhaust all administrative remedies within the OPM and then, if still unhappy with the result, seek judicial review in federal court. *Fornaro v. James*, 416 F.3d 63, 64 (D.C. Cir. 2005). In this case, it is undisputed that Michael did not follow that process.

Michael is not arguing, however, that OPM made a miscalculation. Instead, he argues that OPM has incorrectly interpreted and applied the original COAP, which needs to be clarified as a result. The Code of Federal Regulations (CFR) contemplates that a trial court could amend or supersede a COAP:

> OPM must honor a court order acceptable for processing that appears to be valid and that the former spouse has certified is currently in force and has not been amended, superseded, or set aside, until OPM receives a court order . . . amending or superseding the court order submitted by the former spouse.

5 C.F.R. 838.224(b). In other words, the CFR implicitly permits the trial court to retain subject matter jurisdiction to issue a new COAP superseding the old one. Here, that is precisely what occurred, and we find no fault with the trial court's conclusion that it retained subject matter jurisdiction over these matters.

## II. Modification of COAP

[11] Next, Pamela argues that the trial court erred by modifying the original COAP because there is no evidence of fraud. She directs our attention to Indiana Code section 31-15-7-9.1(a), which states that orders concerning property disposition in a marriage dissolution action "may not be revoked or modified, except in case of fraud."

[12] In this case, the trial court did not modify or revoke the property distribution as contained in the amended dissolution decree. Instead, it set aside and amended the COAP—not the property distribution itself. Pamela will still receive precisely what was awarded to her in the amended dissolution decree, which includes 80% of Michael's pension as of December 2005. The trial court did not intend to award Pamela any share of Michael's property that he would accrue post-dissolution—nor does she argue that she is entitled to the same— and the trial court's decision to issue a new COAP merely serves to correct an error in OPM's interpretation of the original COAP. Therefore, the above statute does not apply and the trial court need not have found fraud to award the relief sought by Michael.

# III. Relief From Judgment

[13] Finally, Pamela argues that Michael was not entitled to relief under Trial Rule 60(B). Initially, we note that neither Michael's motion nor the trial court's orders reference Trial Rule 60. But we agree with Pamela that this rule is the most likely basis of the trial court's orders.

[14] While Pamela focuses on Trial Rule 60(B), we agree with Michael that the provision that aligns most directly with this case is actually Trial Rule 60(A): "Of its own initiative or on the motion of any party . . . , clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the trial court at any time[.]"[3]

[15] Here, it is apparent that the trial court believed that an omission in the original COAP—specifically, the omission of a specific statement that Pamela would not be entitled to a portion of Michael's pension that accrued after the marriage was dissolved—led to an error in its interpretation and application by the OPM. The trial court explicitly noted that in the original COAP, the court "did not and could not intend or order that Wife receive assets acquired by Husband after the marriage ended." First Appealed Order p. 2. We note, again, that Pamela does not argue that she is actually entitled to this money; she merely seeks to retain it based on procedural grounds. *See, e.g.*, *Citizens Action Coalition*

---

[3] There is a slight alteration of the general rule that applies when an appeal has been filed before the error is corrected by the trial court, but that does not apply here.

*of Ind., Inc. v. N. Ind. Public Serv. Co.*, 76 N.E.3d 144, 157 n.4 (Ind. Ct. App. 2017) (observing that Indiana courts disapprove of "gotcha" litigation).

[16]     Because OPM's interpretation of the original COAP led to a result that the original trial court did not and could not have intended, the trial court elected to revise the COAP so that its original intent could be realized. Under these circumstances, we find that the trial court did not err by setting aside the original COAP based on the error in that order. *See Drost v. Prof'l Bldg. Serv. Corp.*, 176 Ind. App. 172, 175, 375 N.E.2d 241, 244 (1978) (holding that the reason for Trial Rule 60(A) "is that in the case of clearly demonstrable mechanical error the interests of fairness outweigh the interests of finality which attend the prior adjudication").

[17]     The judgment of the trial court is affirmed.

Bailey, J., and Vaidik, J., concur.