**Jerry TODD, et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. 01–409C.

United States Court of Federal Claims.

May 5, 2003.

George M. Chuzi, Kalijarvi, Chuzi & Newman, P.C., Washington, DC, for plaintiffs.

Thomas D. Dinackus, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. Peter J. Hannums, Federal Aviation Administration, Washington, DC, of counsel.

## OPINION AND ORDER

HODGES, Judge.

Plaintiffs are managers and supervisors who seek back pay as third-party beneficiaries of a contract negotiated by the Federal Aviation Administration and the National Air Traffic Controllers Association. The Government has not disputed plaintiffs' alleged third-party beneficiary status until now. *See Todd v. United States*, Hearing Tr. at 20, No. 01–409C (Fed.Cl. May 15, 2003).[1] "The Government has never conceded that plaintiffs are third-party beneficiaries, such that the CBA could provide jurisdiction for this Court to entertain this suit." Brief in Response to Court Order, p. 10, n. 9 (April 29, 2003). Defendant also contends now that "[a] third party cannot be made a third party beneficiary of a contract by the post-hoc unilateral act of one of the signatories to the contract." (citation omitted).

Plaintiffs argue that agreements and memoranda of understanding between the Federal Aviation Administration and the National Air Traffic Controllers Association entitle them to higher salaries. The agreements govern classification of FAA facilities and establish procedures for reclassifying facilities according to air traffic volume.

Defendant stated at a hearing last year that Albuquerque Center was a Level 10 facility, and that its traffic volume was well below the "break point" for Level 11 classification. After that hearing, the parties assured the court repeatedly that they would settle. We granted many extensions based on those representations, and the case is now nearly two years old. The Government raised subject matter jurisdiction for the first time in March of this year. Defendant made little mention of jurisdiction during the hearing last year or in the Answer filed October 2001.

## BACKGROUND

Congress authorized the Administrator of the Federal Aviation Administration in 1995 to develop a new Personnel Management System to supplant the compensation and classification system then in effect. *See* 49 U.S.C. § 40122(g).[2] The Personnel Management System is exempt from Title 5 of the United States Code with several exceptions.[3]

The FAA classifies air traffic control facilities according to the amount of traffic that passes through the facilities' air space. The Personnel Management System compensates employees of a facility based on its Classification Index. The FAA and the National Air Traffic Controllers Association negotiated the system for classifying air traffic volume and for compensating employees.

FAA issued classification standards adopting the negotiated system in January 1999, including a formula for counting civilian and military aviation traffic. The System uses a

---

1. "Are you concerned at all about the fact that these plaintiffs are not members of the union [that] negotiated this deal to start with?

"Probably not .... It appears that even though these individuals were not members of the union, it was understood that they would be, in a sense, a beneficiary of the union agreement because they work in the same facility as the people who are covered by the union agreement.

"And there was intent that they be benefitted? "Correct."

2. Personnel management system—

[T]he Administrator shall develop and implement, not later than January 1, 1996, a personnel management system for the [Federal Aviation]

Administration that addresses the unique demands of the agency's workforce. Such a new system shall, at a minimum, provide for greater flexibility in the hiring, training, compensation, and location of personnel. 49 U.S.C. § 40122(g)(1).

3. Applicability of title 5.—

The provisions of title 5 shall not apply to the new personnel management system developed and implemented pursuant to paragraph (1), with the exception of–

. . . . .

(H) sections ... relating to the Merit Systems Protection Board. 49 U.S.C. § 40122(g)(2).

formula to make traffic counts and to assign appropriate levels to FAA facilities. The FAA calculates traffic counts with software known as ETAP. The Classification System assigned the Albuquerque Traffic Control Center a Level 10 (ATC–10) in 1998. This assignment was based on a traffic count of less than 1250, which is considered the break point for reclassification.

Albuquerque Center notified FAA after the ATC–10 assignment in 1998 that ETAP did not account for military traffic handled by the Center, as the Classification Standards require. The FAA released a new version of ETAP in June 1999.

The FAA and NATCA negotiated a Memorandum of Understanding in November 1999, to determine when facilities would be upgraded based on their traffic counts. The qualification procedure is an eight-step process that requires data submitted by the facility to be "validated at the Regional and/or National Level." *See* Memorandum of Understanding, November 15, 1999.

Albuquerque Center issued a memorandum to the FAA in September 2000 stating that using the new software, it had met the criteria for an upgrade to ATC–11. The data were based on traffic counts for June, July, and August of that year. The FAA responded that it could not validate Albuquerque Center's data. FAA released two newer versions of the software the following year, and it has allowed Albuquerque to augment the traffic count manually since then.

Plaintiffs' arguments suggested uncertain or alternative legal theories, so we asked plaintiffs to file the documents that support jurisdiction in this court.[4] It was clear after the March 20 hearing that plaintiffs are claiming an express contract with the United States.

## DISCUSSION

### A.

The Tucker Act grants this court jurisdiction over actions "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491. The Tucker Act is a jurisdictional statute; plaintiffs must show that a substantive right exists elsewhere, such as in a contract or money-mandating statute or regulation. *See United States v. Mitchell*, 463 U.S. 206, 216, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976).

 "Federal employees do not have contractual relationships with the Government, barring an explicit agreement to the contrary." *Darden v. United States*, 18 Cl. Ct. 855, 859 (1989). Federal law governs collective bargaining agreements involving federal employees.

### B.

The FAA Administrator issued an order in March 1996 "to implement a new personnel management system for the FAA that will be more efficient; cost less to operate; provide greater flexibility in the hiring, training, compensation, and location of FAA personnel; and, above all, be fundamentally fair." We asked plaintiffs to provide authority in the Personnel Management System for this court to review FAA's classification decision and to award them back pay. They cited Paragraph 9 of the PMS:

> Agency funds may be used to pay back pay to an FAA employee who, as the result of a decision or settlement under the FAA Grievance Procedure, a collective bargaining agreement, the FAA appeals procedure, or the Executive System Appeals Procedure is found by an appropriate authority to have been affected by an unjustified or unwarranted personnel action that resulted in the withdrawal, reduction, or denial of all or part of the pay, allowances,

---

**4.** One reason that we have had trouble understanding plaintiffs' theory of this case is that they rely entirely on breach of an expressed contract. Traditional breach damages should give them sufficient relief if they could make the necessary showing. Most of plaintiffs' arguments seem to rely on back pay provisions on the collective bargaining agreements.

and differentials otherwise due to the employee.

FAA Personnel Management System, Chapter II, Paragraph 9(a) (March 28, 1996). Paragraph 9 of the PMS is a counterpart to the statute that authorizes back pay for federal employees due to unjustified personnel actions. *See* 5 U.S.C. § 5596.[5] Title 49 U.S.C. § 40122(g)(2) excludes § 5596 from FAA's Personnel Management System ("The provisions of title 5 shall not apply to the new personnel management system ... with the exception of [the Merit Systems Protection Board]").

Plaintiffs seek back pay on the basis that the Agency's refusal to upgrade Albuquerque Center to an ATC–11 facility was an unjustified or unwarranted personnel action under the collective bargaining agreement.[6] They also cite portions of the September 1998 Collective Bargaining Agreement between FAA and the National Air Traffic Control Association. The Back Pay section in Article 37 of the Agreement recognizes "the power of an appropriate authority to render a remedy in accordance with the provisions of 5 U.S.C. § 5596."

A November 1999 Memorandum of Understanding between the FAA and NATCA sets out procedures for upgrading the pay classification of a facility.[7] If a facility establishes that its traffic count warrants a higher classification, "the upgrade shall take effect the first full pay period after the third consecutive month the facility is at or above the breakpoint .... If the administrative process is unable to be completed to meet this time frame, the upgrade shall be retroactive to the first full pay period after the third consecutive month the facility is at or above the break point."

Plaintiffs emphasize that this language is authority for granting them back pay for the difference between an ATC–10 and the ATC–11 classification to which they believe they are entitled. However, the FAA has not classified Albuquerque Center as an ATC–11 facility. Employees at a facility are entitled to an upgrade IF the facility establishes that its traffic count warrants a higher classification. The upgrade takes effect only then, retroactive to the first full pay period three months after it reached the break point. The FAA reviewed Albuquerque Center and determined in July 2001 that it did not warrant reclassification. Plaintiffs' claim for back-pay depends upon their showing either that Albuquerque Center had been upgraded to an ATC–11 facility, or that the Government had an obligation to assign Albuquerque an ATC–11 classification.

Mr. Tisdall is the FAA's Acting Division Manager. He helped draft the Classification Standards, and he established the break points as well. He was in charge of the team that analyzed Albuquerque Center's air traffic volume in July 2001 at the request of the Center. The team determined after a week of reviewing traffic volume statistics that Albuquerque Center's Classification Index was below the 1250 break point.[8]

■ Government employees may not receive pay for positions to which they have not been appointed, regardless of their duties. *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Plaintiffs

---

5. An employee of an agency who, on the basis of a timely appeal or an administrative determination ... is found by an appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee— 5 U.S.C. § 5596(b)(1).

6. "Unjustified or unwarranted personnel action" includes an "act of commission or omission that an appropriate authority subsequently determines, on the basis of substantive or procedural defects, to have been unjustified or unwarranted under applicable law ... or through a collective

bargaining agreement." FAA Personnel Management System, Chapter II, Paragraph 9(c) (March 28, 1996).

7. Defendant argues that the Memorandum of Understanding does not have legal effect because it was not incorporated into an agency directive. We did not find it necessary to address this point.

8. Both parties speculated at a recent hearing that Albuquerque Center's numbers would reach 1250 by this summer. Mr. Tisdall has been reviewing the Center's data as a part of this litigation, however, and he concluded as of April 24, 2003 that Albuquerque would remain below the 1250 breakpoint.

in *Testan* sought a higher level of pay based on the duties that they performed. They sued to be reclassified at a pay grade that was commensurate with those duties. The Supreme Court stated that "Congress has not made available to a party wrongfully classified the remedy of money damages through retroactive classification." *Testan,* 424 U.S. at 403, 96 S.Ct. 948.

 Plaintiffs ask the court to upgrade Albuquerque Center to ATC–11 for the same reason that plaintiffs sued in *Testan*—to qualify for higher pay. They seek money damages for positions to which they should have been appointed, but were not. We cannot address such a claim. *See, e.g., United States v. King,* 395 U.S. 1, 3, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969) (holding that jurisdiction of this court calls for "presently due money damages.").

### CONCLUSION

Plaintiffs allege breach of a contract with the United States, which is a claim within this court's jurisdiction. The contract did not promise plaintiffs that Albuquerque Center would be upgraded to ATC–11, however. We do not have the authority to order FAA to make such a decision without a promise to do so. Moreover,

> plaintiff may not base his theory of recovery on contract law since he was a federal employee. Federal officials who by act or word generate expectations in the persons they employ, and then disappoint them, do not ipso facto create a contract liability running from the Federal Government to the employee, as they might if the employer were not the government.

*Shaw v. United States,* 226 Ct.Cl. 240, 640 F.2d 1254, 1260 (1981).

The contracts to which plaintiffs claim third-party beneficiary status establish a grievance process to protest a "major adverse action." Plaintiffs did not follow this grievance procedure. For that reason, we do not address whether FAA's classification ruling was grievable or whether it was a major adverse action. The collective bargaining agreement provides that its grievance procedure is "exclusive." Plaintiffs argue only breach of contract.

Plaintiffs have not stated a claim for which this court can grant relief. The Clerk will dismiss their complaint. No costs.