Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

Argued January 13, 2004       Decided February 24, 2004

No. 03-5025

GILBERT M. GRAHAM,
APPELLANT

v.

JOHN D. ASHCROFT, IN HIS OFFICIAL CAPACITY AS
U.S. ATTORNEY GENERAL, ET AL.,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 02cv01231)

---

*Gilbert M. Graham*, appearing *pro se*, argued the cause and filed the briefs for appellant.

*Sherri Evans Harris*, Assistant U.S. Attorney, argued the cause for appellees. With her on the brief were *Roscoe C. Howard, Jr.*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

---

 Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: EDWARDS and ROBERTS, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* ROBERTS.

ROBERTS, *Circuit Judge*: Appellant Gilbert Graham, at the time a Special Agent with the Federal Bureau of Investigation, alleges that the Bureau violated its own regulations in the course of censuring him for alleged irregularities in a surveillance operation. We hold that the Civil Service Reform Act of 1978 (CSRA), Pub. L. No. 95-454, 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C.), precludes judicial review of Graham's claim, and accordingly affirm the district court's dismissal of his action.

## I. Background

Graham was a Special Agent in the FBI's Washington Field Office who had responsibility for managing a surveillance operation. In April 1999, another Special Agent reported a potential Intelligence Oversight Board (IOB) violation involving Graham and others to the Inspection Management Unit. The IOB, a standing committee of the President's Foreign Intelligence Advisory Board, investigates and reports on intelligence activities that may be unlawful or contrary to executive order. Exec. Order No. 12,863, 58 Fed. Reg. 48,441, 48,442 (Sept. 13, 1993). The report of a possible IOB violation triggered an inquiry by the FBI's Office of Professional Responsibility (OPR) to determine whether Graham was guilty of investigative dereliction. In the course of that inquiry, Graham was notified of the allegation against him and afforded an opportunity to submit a sworn statement.

OPR eventually concluded that Graham had violated IOB requirements, and suspended him without pay for three days. Graham appealed to the Inspection Division, which noted that Graham was "a 24-year veteran of the Bureau with a good service record and no prior disciplinary sanctions" who immediately notified his superiors of the IOB violation, allowing corrective action to be taken to rectify the situation and avoid any detrimental effects. Letter from Thomas Locke, Inspection Division, to Graham (May 22, 2002) at 2. The Inspection

Division reduced Graham's suspension to a letter of censure, with no loss of pay or benefits.

Graham, however, remained unsatisfied. He sued the Attorney General and the Director of the FBI in their official capacities (collectively the FBI), challenging the FBI's actions during the investigation of the IOB violation and the ensuing disciplinary process. He alleged that the FBI violated the Administrative Procedure Act, failed to abide by its own internal procedures and regulations, denied him procedural due process, and violated his equal protection rights by discriminating against him on grounds of race.

The FBI moved to dismiss the claims for lack of subject matter jurisdiction and for failure to state a claim. In his memorandum opposing the motion, Graham asserted, *inter alia*, that the FBI "must adhere to voluntarily adopted, binding polic[i]es that limit its discretion," citing *Vitarelli v. Seaton*, 359 U.S. 535, 539 (1959). Pl. Mem. Opp. Mot. Dismiss at 5. In *Vitarelli*, the Supreme Court held that even agencies with broad discretion must adhere to internally promulgated regulations limiting the exercise of that discretion. 359 U.S. at 539–40; *see Padula v. Webster*, 822 F.2d 97, 100 (D.C. Cir. 1987) ("It is well settled that an agency, even one that enjoys broad discretion, must adhere to voluntarily adopted, binding policies that limit its discretion."). Graham's contention was that the FBI had violated its own internal regulations and procedures governing how to handle alleged IOB transgressions and any resulting disciplinary process. Although Graham was afforded notice and an opportunity to submit a statement prior to being disciplined, he contends that the FBI's internal rules promised him earlier notice and an opportunity to respond, and that, had he been given the procedural protections allegedly required, he would have been able to forestall even the letter of censure.

The district court disposed of the entire action. That court found that it lacked subject matter jurisdiction over Graham's APA claims, because the CSRA precludes review under the APA of employment-related decisions. Next, the district court dismissed the due process claims, holding that Graham

failed to demonstrate the deprivation of a constitutionally protected interest, and that he received in any event all the process due under the Fifth Amendment. The court also dismissed Graham's equal protection claim, explaining that Title VII is the exclusive remedy for a federal employee claiming racial discrimination.

Graham appealed to this court. We summarily affirmed the district court's dismissal of his constitutional and APA claims. *Graham v. Ashcroft*, No. 03-5025, slip op. at 1, 2003 WL 21939757, at *1 (D.C. Cir. Aug. 5, 2003). This court declined, however, to summarily affirm the dismissal of what was identified as Graham's separate *Vitarelli* claim — the contention that, quite apart from the Constitution or the APA, the Bureau was required to follow its own internal regulations voluntarily adopted to circumscribe its discretion, but had failed to do so. *Id.* Only that claim is now at issue.

## II. Analysis

The FBI contends that the CSRA "provides the exclusive remedy for a federal employee to challenge an agency's disciplinary decision" — thereby precluding any judicial review of alleged procedural violations under *Vitarelli*. Appellees' Br. at 9. The CSRA provides a comprehensive scheme to administer adverse personnel actions against federal employees. *See Lindahl v. OPM*, 470 U.S. 768, 773–74 (1985). "It prescribes in great detail the protections and remedies applicable to such action[s], including the availability of judicial review." *United States v. Fausto*, 484 U.S. 439, 443 (1988). Chapter 75 of the CSRA governs adverse personnel actions based on misconduct: Subchapter I, 5 U.S.C. §§ 7501–7504, governs minor adverse personnel actions and Subchapter II, 5 U.S.C. §§ 7511–7514, governs major adverse personnel actions. Subchapter I defines a minor personnel action as suspension for 14 days or less, § 7502, and applies only to employees in the "competitive service," § 7501. Although Section 7503 provides some procedural protections in such cases, there is no right to judicial review for covered employees under Subchapter I.

Subchapter II governs major adverse personnel actions, defined as removal, suspension for more than 14 days, reduction in grade or pay, or furlough for 30 days or less. § 7512. Employees covered by Subchapter II are entitled to administrative review by the Merit Systems Protection Board (MSPB), and subsequent judicial review in the Court of Appeals for the Federal Circuit. §§ 7513(d), 7701, 7703. Although FBI employees are generally excluded from CSRA provisions, *see* §§ 2302(a)(2)(C)(ii), 7511(b)(8), Subchapter II does apply to "preference eligible" FBI employees. § 7511(a)(1)(B). Such "preference eligible" employees are entitled to specified protections under the CSRA because of prior military service. *See* § 2108(3).

The foregoing statutory scheme does not provide Graham a right to judicial review in the present circumstances. Although Graham may claim the protections of Subchapter II because of his status as a "preference eligible" employee,[1] the adverse personnel action in this case — a letter of censure — fails to qualify as a major adverse personnel action under Section 7512. (Indeed, it does not even qualify as a minor adverse personnel action under Subchapter I.) Graham accordingly is not entitled to administrative and judicial review of this action under the CSRA. *See* §§ 7512, 7513(d), 7703(a)(1).

The consequences of the lack of availability of relief under the CSRA for government employees seeking to challenge employment actions through other avenues were spelled out by the Supreme Court in *Fausto*. In that case, a government employee — whose status gave him no right to administrative or judicial review under the CSRA — sought judicial review of his removal from government service under the Back Pay Act, contending that his dismissal had violated regulations

---

[1] Although Graham failed to allege that he is "preference eligible" in his complaint, he did claim that status in his memorandum opposing the FBI's motion to dismiss. The FBI did not dispute that Graham was "preference eligible" for purposes of the motion to dismiss. Def. Reply to Pl. Opp. Mot. Dismiss at 3 n.3.

issued by his employing agency. *See* 484 U.S. at 441–43 & n.2. The Supreme Court held that the comprehensive framework of the CSRA precluded judicial review under the Back Pay Act:

> The CSRA established a comprehensive system for reviewing personnel action taken against federal employees. Its deliberate exclusion of employees in respondent's service category from the provisions establishing administrative and judicial review for personnel action of the sort at issue here prevents respondent from seeking review . . . under the Back Pay Act.

*Id.* at 455.

The Court explained that allowing direct judicial review of employment claims for employees with no rights under the CSRA would provide them a more substantial right to review than was available to personnel granted a right to judicial review under the CSRA; such personnel had to first seek administrative review by the MSPB before gaining judicial review in the Federal Circuit. *See id.* at 448–50. Direct judicial review would also undermine "the development, through the MSPB, of a unitary and consistent Executive Branch position on matters involving personnel action," and would frustrate congressional intent in the CSRA to "avoid[ ] an unnecessary layer of judicial review in lower federal courts." *Id.* at 449 (internal quotation marks omitted).

*Fausto* is not directly on point. It involved a "type of personnel action covered by [the CSRA]," *id.* at 448 — removal — as to which some employees were given judicial review rights and some (like Fausto) were not. The Court reasoned that in not granting review to *some* employees under the CSRA for actions covered by the CSRA, Congress meant to preclude those employees from securing review under other avenues. The present case involves an employee granted certain judicial review rights under the CSRA, but whose rights do not extend to the personnel action at issue — a letter of censure. The question is whether in granting review with respect to some personnel actions under the CSRA, Congress meant to preclude review of others.

The logic of *Fausto*, if not its holding, provides the answer. The Court rejected Fausto's claim because granting it would have given him greater rights than were available under the CSRA to employees who enjoyed rights under that statute — primarily those in the competitive service. *Id.* at 449–50. As the Court expressly noted, this reasoning "assumes, of course, that competitive service employees, who *are* given review rights by Chapter 75, cannot expand those rights by resort to pre-CSRA remedies. ... Even respondent has not questioned this assumption." *Id.* at 450 n.3.

The Court's explicit assumption in *Fausto* that employees with judicial review rights under the CSRA may not obtain judicial review of personnel actions outside the bounds of the CSRA covered precisely the situation at issue here — a personnel action as to which the CSRA grants no right of review, even for employees who are otherwise granted such rights under the CSRA in other circumstances. The hypothetical in the text of *Fausto* to which the quoted footnote 3 was appended concerned an employee like Fausto obtaining judicial review for a 10–day suspension, while a competitive service employee favored with rights under the CSRA would not, because judicial review under the CSRA is available only for suspensions of more than 14 days. *Id.* at 449–50. The Court's assumption that the CSRA-favored employee would have no right to review of a suspension below the CSRA minimum — necessary to its analysis — strongly indicates that the CSRA-favored Graham has no right to review of a letter of censure, similarly below the CSRA minima for both major and minor adverse personnel actions.

In addition, Justice Scalia in footnote 3 of *Fausto* cited his opinion for our court in *Carducci v. Regan*, 714 F.2d 171, 173–75 (D.C. Cir. 1983). That case held that judicial review was not available under the APA with respect to employment claims as to which the CSRA provided no relief to anyone, because the alleged adverse actions were too minor. Allowing judicial review in such a case, our court explained, presented "an even more aggravated form of the problem" posed by allowing employees with claims for which the CSRA provided some relief (but not judicial review) to obtain direct

judicial review, when such direct review was not even available under the CSRA for the most serious claims. *Id.* at 174. The *Fausto* Court's citation of *Carducci* strongly suggests that Graham's situation — involving an adverse personnel action as to which not even CSRA-favored employees have any rights of review — presents an even stronger case for CSRA preclusion than *Fausto*.

In light of the foregoing, it is clear that judicial review of Graham's personnel claims under *Vitarelli* is precluded by the CSRA. Granting Graham a right of direct judicial review for a letter of censure would give him greater rights than the CSRA affords for major adverse actions, for what does not even rise to the level of a minor adverse action under the CSRA. Graham tries to distinguish *Fausto* by noting that he, unlike Fausto, is a preference eligible employee under the CSRA, *see* Pl. Mem. Opp. Mot. Dismiss at 8, but that only gives Graham rights with respect to major adverse actions (and even there, lesser rights than Graham claims). For the sort of action at issue here, Graham is in the same boat as Fausto — the CSRA provides no relief and precludes other avenues of relief. *Fausto* and *Carducci* together establish that the fact that the CSRA provides no relief for lesser personnel actions cannot be dismissed as an "uninformative consequence of the limited scope of the statute." *Fausto*, 484 U.S. at 448. As we explained in *Spagnola v. Mathis*, 859 F.2d 223, 227 (D.C. Cir. 1988) (en banc), "it is the comprehensiveness of the statutory scheme involved, not the 'adequacy' of specific remedies thereunder, that counsels judicial abstention."

It is no answer to invoke the principle that agencies must follow their own regulations. That was, after all, the assertion in *Fausto*, and the Court held that it was trumped by the proposition that agencies cannot purport to confer rights undermining a comprehensive congressional scheme. The conclusion that the CSRA precludes employee *Vitarelli* claims in light of *Fausto* should come as no surprise; the dissent in *Fausto* expressly noted that "[i]n important respects [Fausto's] case is similar to *Vitarelli*." 484 U.S. at 456 (Stevens, J., dissenting). The majority rejected the dissent's contention

that allowing Fausto's claims to proceed would not be disruptive of the comprehensive CSRA scheme, because such claims "will be 'limited to those instances when the agency violates its own regulations,'" *id.* at 451 n.5 (quoting dissent, *id.* at 466) — *i.e.*, claims under *Vitarelli*. Even those claims were precluded.

We hold that the CSRA precludes judicial review of Graham's claim that the FBI violated its own regulations in taking personnel action against him. The district court therefore had no subject matter jurisdiction over his *Vitarelli* claim. *See National Treasury Employees Union v. Egger*, 783 F.2d 1114, 1117 (D.C. Cir. 1986) (affirming district court's dismissal for lack of subject matter jurisdiction because the CSRA precluded judicial review of minor personnel actions).

\*  \*  \*

We affirm the district court's dismissal of Graham's complaint.