# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued January 13, 2009      Decided February 13, 2009

No. 08-5163

JOSEPH J. FILEBARK, II, ET AL.,
APPELLANTS

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION AND
FEDERAL AVIATION ADMINISTRATION,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:03-cv-01685)

*George M. Chuzi* argued the cause and filed the briefs for appellant.

*Beverly M. Russell*, Assistant U.S. Attorney, argued the cause for appellees. With her on the brief were *Jeffrey A. Taylor*, U.S. Attorney, *R. Craig Lawrence*, Assistant U.S. Attorney, and *Elizabeth J. Head*, Attorney, Federal Aviation Administration.

Before: HENDERSON, TATEL, and GARLAND, *Circuit Judges*.

2

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: We have long held that federal employees may not use the Administrative Procedure Act to challenge agency employment actions. *See Fornaro v. James*, 416 F.3d 63, 66–67 (D.C. Cir. 2005); *Graham v. Ashcroft*, 358 F.3d 931, 933–35 (D.C. Cir. 2004); *Carducci v. Regan*, 714 F.2d 171, 172 (D.C. Cir. 1983). This is so because Congress, through the Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C.), and related employment statutes, has carefully constructed a system for review and resolution of federal employment disputes, intentionally providing—and intentionally not providing—particular forums and procedures for particular kinds of claims. As such, we have held that this comprehensive employment scheme preempts judicial review under the more general APA even when that scheme provides no judicial relief—that is, "what you get under the CSRA is what you get." *Fornaro*, 416 F.3d at 67. In this case four air traffic controllers nonetheless argue that they may use the APA to litigate their pay dispute with the Federal Aviation Administration because the CSRA provides them no protection. Straightforwardly applying our precedent, we affirm the district court's dismissal of their suit.

**I.**

Appellants are four air traffic controllers of the Albuquerque, New Mexico Air Traffic Control Center. Two are bargaining unit members represented by the National Air Traffic Controllers Association (NATCA) while two are excluded from the unit as supervisors, but agreements between NATCA and the FAA control the pay of all four. Under those agreements, salary levels vary from airport to airport based on the amount and complexity of the air traffic

they manage. The controllers believe the Albuquerque Center's salary level is set too low because, in their view, the site's traffic figures erroneously exclude certain military flights.

In April 2000, one of the bargaining unit employees, appellant Joseph Filebark II, following the procedure set out in his collective bargaining agreement, filed a grievance about the salary-level classification with the Albuquerque Center. That grievance was denied, and when Filebark asked the union to pursue the matter to arbitration, the union declined. The Center itself later applied to the FAA for a salary-level upgrade, but that request was denied pending validation of the computer systems that measure air traffic. Although NATCA eventually filed a grievance on behalf of employees at the Albuquerque Center, it withdrew that grievance before it was decided. Meanwhile, one of the non–bargaining unit controllers attempted to file a grievance, which was refused. He later sued in the Court of Federal Claims on a contract theory, but the court rejected his claim as outside its Tucker Act jurisdiction. *Todd v. United States*, 56 Fed. Cl. 449, 453 (2003), *aff'd*, 386 F.3d 1091 (Fed. Cir. 2004).

Having failed to obtain review on the merits through any of these avenues, the controllers brought a two-count complaint in United States District Court for the District of Columbia. Count I sought review of Filebark's denied grievance, identifying 5 U.S.C. § 7121(a)(1), a provision of the CSRA, as the statutory basis for judicial review of negotiated grievance procedures. Am. Compl. ¶¶ 37–38. Count II sought APA review of the Albuquerque Center's salary-level classification on behalf of all plaintiffs. *Id.* ¶¶ 39–42. Concluding that section 7121(a)(1), rather than authorizing the suit, "precludes [employees with negotiated grievance procedures] from seeking judicial review" of any

kind, *Filebark v. U.S. Dep't of Transp.* (*Filebark I*), 468 F. Supp. 2d 3, 6 (D.D.C. 2006), the district court dismissed both counts brought by the bargaining unit employees, eliminating Count I entirely and leaving only the APA claims of the non–bargaining unit supervisors, *id.* at 6. Addressing and rejecting only one argument—regarding exhaustion of administrative remedies—the district court allowed the supervisors' APA claims to go forward. *Id.* at 7–8. By minute order, the district court denied both sides' requests for reconsideration. In a second opinion, however, it dismissed the supervisors' APA claims, finding them precluded under our CSRA precedents. *Filebark v. Dep't of Transp.* (*Filebark II*), 542 F. Supp. 2d 1, 6–9 (D.D.C. 2008).

Significantly for our purposes, the FAA is largely exempted from the CSRA by 49 U.S.C. § 40122(g)(1), which directs the FAA to develop "a personnel management system for the Administration that addresses the unique demands on the agency's workforce," "notwithstanding the provisions of title 5 [i.e., the CSRA] and other Federal personnel laws." *See also* § 40122(g)(2) ("The provisions of title 5 shall not apply to the new personnel management system . . . ."). Congress required that "[s]uch a new system shall, at a minimum, provide for greater flexibility in the hiring, training, compensation, and location of personnel." § 40122(g)(1). In response the FAA created a personnel management system with dispute resolution provisions that largely track those of the CSRA, providing greater review for major adverse actions and no review for minor actions like this pay-scale dispute. The general exemption from the CSRA has certain exceptions, however, as CSRA provisions such as "chapter 71, relating to labor-management relations," continue to apply. § 40122(g)(2)(C).

Among the provisions in that chapter that still apply is section 7121(a)(1), which requires that collective bargaining agreements contain negotiated procedures for the settlement of grievances, and which the controllers cite as the statutory basis for Count I of their amended complaint. This section previously provided that such negotiated grievance procedures would be "the exclusive procedures for resolving grievances which fall within its coverage." 5 U.S.C. § 7121(a)(1) (1994). In 1994, however, Congress amended section 7121(a)(1) to make negotiated grievance procedures "the exclusive *administrative* procedures for resolving grievances which fall within its coverage." § 7121(a)(1) (emphasis added). Having held that the earlier version of this section precluded all judicial review for employees with negotiated grievance procedures, *Carter v. Gibbs*, 909 F.2d 1452, 1454 (Fed. Cir. 1990) (en banc), the Federal Circuit recently reversed course, holding that the 1994 amendment signaled Congress's intent no longer to preclude all review of covered grievances. *Mudge v. United States*, 308 F.3d 1220, 1227 (Fed. Cir. 2002).

Seeking reversal of the district court's ruling that they have no cause of action, the controllers make three arguments: (1) that the district court erred in dismissing the bargaining unit members because section 7121(a)(1), as amended, no longer precludes judicial review of negotiated grievance procedures; (2) that by revisiting dismissal of the APA claims, the district court violated the law of the case; and (3) that because their employer is largely exempt from the CSRA, the controllers can maintain an APA cause of action notwithstanding our CSRA preclusion precedents. We consider each argument in turn.

## II.

The controllers' first argument—applicable only to the bargaining unit members—lacks in relevance whatever it might have in merit. It may be true that in amending section 7121(a)(1) Congress intended no longer to preclude all judicial review for employees with negotiated grievance procedures; it may also be true that *Mudge* correctly allowed the employees in that case to proceed; it may even be true that the district court's first opinion in this case erroneously used section 7121(a)(1) as justification for dismissing all bargaining-unit employee claims. But even if section 7121(a)(1) no longer has this preclusive effect, it is emphatically untrue that "§ 7121(a)(1) *establishes* [a] federal employee's right to seek judicial remedy for [a] grievance subject to negotiated procedures in [a] collective bargaining agreement," as the controllers maintain in their complaint, Am. Compl. ¶ 37 (emphasis added). To the contrary, as the Supreme Court explained in *Whitman v. Department of Transportation*, 547 U.S. 512, 513 (2006), section "7121(a)(1) does not confer jurisdiction," nor does it create a cause of action.

Because section 7121(a)(1), by itself, provides no right to sue, the bargaining unit employees must point to an independent source of law in order to maintain this action. In *Mudge* a money claim within the Tucker Act jurisdiction of the Court of Federal Claims provided the cause of action, *see* 28 U.S.C. § 1491(a)(1); *Mudge v. United States*, 50 Fed. Cl. 500, 502 (Fed. Cl. 2001); in *Carter*, the case that *Mudge* held overruled by the 1994 amendment, the Fair Labor Standards Act, 29 U.S.C. § 216(b), provided the cause of action, *see* 909 F.2d at 1453. Neither is available here. In fact, the only basis for a cause of action the bargaining unit controllers even mention in their complaint is the APA—the same source identified by the non–bargaining unit controllers. Thus, the

case for all four controllers begins and ends with the question identified as central by the Supreme Court in *Whitman* and answered in the district court's second opinion—namely "whether § 7121 (*or the CSRA as a whole*) removes the jurisdiction given to the federal courts or otherwise precludes employees from pursuing" a claim under the APA, *Whitman*, 547 U.S. at 514 (emphasis added, citation omitted). If we answer that question in the affirmative then neither the bargaining unit members nor the supervisors have a claim, whether or not the district court, in its first opinion, properly relied on section 7121(a)(1) to dismiss all bargaining unit employee claims.

Before we address that question, however, we must resolve a preliminary matter. The controllers argue that by reversing its previous denial of dismissal on the APA claims without a change in facts or law the district court violated the law of the case doctrine. In its second opinion, the district court explained the change as based in "the parties' lack of clarity regarding their arguments," and held that reconsidering the issue would not violate the law of the case because failing to reconsider would "be erroneous and work a manifest injustice." *Filebark II*, 542 F. Supp. 2d at 5 n.10. These justifications matter not at all, however, because the law of the case doctrine just doesn't apply here. Federal Rule of Civil Procedure 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." The district court's first denial of dismissal was never a final judgment and never subject to appeal, and such "[i]nterlocutory orders are not subject to the law of the case doctrine and may always be reconsidered prior to final judgment," *Langevine v. District of Columbia*, 106 F.3d 1018, 1023 (D.C. Cir. 1997). Accordingly, the district court was

free to reconsider the motion to dismiss the controllers' APA-based employment claim, as we are free to consider that question now.

Reviewing de novo the dismissal of the APA claims, *e.g.*, *Munsell v. Dep't of Agric.*, 509 F.3d 572, 578 (D.C. Cir. 2007), we find no error in the district court's decision. Twenty-five years ago, in *Carducci v. Regan*, we held that "the exhaustive remedial scheme of the CSRA would be impermissibly frustrated by permitting, for lesser personnel actions not involving constitutional claims, an access to the courts more immediate and direct than the statute provides with regard to major adverse actions."  714 F.2d at 174. Holding that "failure to include some types of [claims] within the remedial scheme of so comprehensive a piece of legislation reflects a congressional intent that no judicial relief be available," we found an APA remedy beyond that provided in the CSRA precluded by the comprehensiveness of the CSRA itself. *Id.* at 174–75.  The Supreme Court reached a similar conclusion five years later in *United States v. Fausto*, holding that the exclusion of particular employees (rather than particular claims) from the CSRA was not an invitation to those employees to sue under other statutes but a "manifestation of a considered congressional judgment that they should not have statutory entitlement to review."  484 U.S. 439, 448–49 (1988).

We clarified the breadth of these precedents in two recent cases.  In *Graham v. Ashcroft*, we held that the lack of any entitlement to judicial review in the CSRA precluded litigation of an employment matter under the APA even where the complaint did not concern "'a *type* of personnel action covered by the CSRA.'"  358 F.3d 931, 934 (D.C. Cir. 2004) (quoting *Fausto*, 484 U.S. at 448 (emphasis added, brackets omitted)).  Thus, we found preclusion not because

the CSRA identified some other kind of plaintiff or some other kind of procedure for bringing the claim, but because it provided no way of bringing it. As to such claims we said, "the CSRA provides no relief and precludes other avenues of relief." *Id.* at 935. One year later in *Fornaro w*e made the point even more directly, holding that "what you get under the CSRA is what you get." 416 F.3d at 67. Not one of our precedents has cited section 7121(a)(1) in so holding, and the controllers nowhere argue that the 1994 amendment affects these cases or their now-familiar analysis.

To be sure, the controllers correctly point out that Congress largely exempted the FAA from the CSRA, and that we have never before had occasion to apply our preclusion cases to employees of an exempt agency. But the upshot of our precedents for this case is absolutely clear. Far from saving an APA claim, Congress's exemption of these controllers' agency from the CSRA signals the same thing as Congress's omission of the type of personnel action at issue in *Graham* or the type of employees at issue in *Fausto*—namely that Congress intended to provide these employees with no judicial review. This is because we treat the CSRA and Congress's related employment statutes as covering the field of federal employee claims, and so our cases expressly teach that those left out of this scheme are left out on purpose. Indeed this case is easier than most, for we need make no inferences about the pregnant meaning of legislative silence. In exempting the FAA from the CSRA, Congress made its intent perfectly clear: to "provide for greater flexibility in the hiring, training, compensation, and location of personnel." 49 U.S.C. § 40122(g)(1). Because giving FAA employees a unique right of access to the courts would frustrate rather than further that intent, proper application of our precedents bars this suit. *See also McAuliffe v. Rice*, 966 F.2d 979, 980–81 (5th Cir. 1992) (reaching same conclusion as to different

entity exempted from CSRA because allowing APA review would "thwart[] the goal of maintaining flexibility").

The controllers argue that "[w]hatever the scope of the 'flexibility' which Congress granted to the FAA, it is inconceivable that Congress authorized the FAA to devise a compensation plan for its Controllers and then violate that plan with impunity and without review." Appellants' Opening Br. 30. The controllers never develop this apparent due process argument, nor could they, for even its factual premise is flawed. The controllers do have a remedy: if the FAA fails to live up to its agreements, the union can pursue the matter, *see, e.g.*, Mot. to Dismiss Ex. 9 (union grievance regarding Albuquerque Center salary level), and if the union fails to live up to its duty of representation, the controllers can pursue the union, *see Steadman v. Governor, U.S. Soldiers' and Airmen's Home*, 918 F.2d 963, 966 (D.C. Cir. 1990) ("A failure to seek arbitration (which an employee may not compel on his own) may constitute such a breach of the union's duty [of fair representation]. But, in that event, only the FLRA—not a district court—may remedy the breach by ordering arbitration."). These procedures surely lack the directness and immediacy of an APA suit, and the controllers have apparently found them frustrating, Appellants' Reply Br. 6–7 n.5 (accusing NACTA of "machinations" designed to defeat Filebark's claims). But the choice of procedures lies with Congress, and as we have repeatedly held, Congress had no intention of providing claimants like these—unmentioned in the CSRA—with a level of access to the courts unavailable to almost any other federal employees, including those that the CSRA identifies as most worthy of procedural protection. *See Graham*, 358 F.3d at 935 (citing *Fausto* and *Carducci* for the proposition that giving direct APA review to claimants not entitled to review procedures under the CSRA would upset careful congressional layering of remedial procedures). Thus,

we find this APA claim precluded by the structure of Congress's employment statutes and "the CSRA as a whole," *Whitman*, 547 U.S. at 514.

## III.

Because the controllers identify only the APA as the statutory basis for their claims, and because such claims are precluded by the CSRA as a whole regardless of who brings them, we affirm.

*So ordered.*