# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued May 10, 2013        Decided June 28, 2013

No. 12-5016

J. JEREMIAH MAHONEY, AN ADMINISTRATIVE LAW JUDGE AT THE UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,
APPELLANT

v.

SHAUN DONOVAN, SECRETARY OF THE UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT AND JOHN BERRY, DIRECTOR OF THE UNITED STATES OFFICE OF PERSONNEL MANAGEMENT,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cv-01703)

*Michael F. Williams* argued the cause for appellant. With him on the briefs was *Steven A. Myers*. *John F. Karl Jr.* entered an appearance.

*Ryan C. Morris*, *Francis A. Vasquez Jr.*, and *Leah E. Witters* were on the brief for *amici curiae* Federal Administrative Law Judges Conference, et al. in support of appellant.

*Addy R. Schmitt*, Assistant U.S. Attorney, argued the cause for appellees. With her on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: ROGERS and KAVANAUGH, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* RANDOLPH.

RANDOLPH, *Senior Circuit Judge*: This is an appeal from the judgment of the district court dismissing, for lack of standing, J. Jeremiah Mahoney's complaint. We affirm, but on different grounds.

Mahoney is an administrative law judge—an ALJ—at the U.S. Department of Housing and Urban Development. He brought this action alleging that the agency had interfered with his decisional independence and thereby violated the Administrative Procedure Act. His complaint alleged that his supervisor, David Anderson, had "failed to consistently assign cases to him in a rotating manner" and had instead "selectively assigned cases to judges based upon political considerations [or] the Secretary's perceived interests"; that Anderson had engaged in *ex parte* communications with a party in a case pending before him without his knowledge or consent; that the agency had a practice of sending notices of election in Fair Housing Act cases to the Justice Department before the administrative law judges officially released the notices to other parties, thereby providing the Justice Department with advance notice of cases soon to be filed in district court; that Anderson had prevented the docket clerk from providing docket numbers for certain cases assigned to him and other administrative law judges; and that the agency had "denied legal research resources" to the administrative law judges for more than a month. ALJ Mahoney

further alleged that the Office of Personnel Management had failed to protect his decisional independence.[1]

We need not decide whether the district court correctly dismissed ALJ Mahoney's claims for lack of standing. In our view, the Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C.), deprived the district court of subject-matter jurisdiction over the complaint. *See Graham v. Ashcroft*, 358 F.3d 931, 935–36 (D.C. Cir. 2004).

The Civil Service Reform Act governs federal employment. "It prescribes in great detail the protections and remedies applicable to [personnel actions], including the availability of administrative and judicial review." *United States v. Fausto*, 484 U.S. 439, 443 (1988). A number of provisions, originally enacted in § 11 of the Administrative Procedure Act, *see Ramspeck v. Fed. Trial Exam'rs Conference*, 345 U.S. 128, 131–33 (1953), and reaffirmed (implicitly or explicitly) in the Civil Service Reform Act, are designed to safeguard the decisional independence of administrative law judges. For example, administrative law judges are to be assigned cases in

---

[1] ALJ Mahoney also asserted claims of retaliation and a hostile work environment under the Rehabilitation Act, the Americans with Disabilities Act, and Title VII of the Civil Rights Act of 1964. The district court granted summary judgment for the defendants on two of ALJ Mahoney's retaliation claims for failure to exhaust administrative remedies, and dismissed the remaining retaliation and hostile-work-environment claims for failure to state a claim. *See Mahoney v. Donovan*, 824 F. Supp. 2d 49, 57–63 (D.D.C. 2011). A panel of this court summarily affirmed the district court's judgment with respect to those claims. *See Mahoney v. Donovan*, No. 12-5016, 2012 WL 3243983 (D.C. Cir. Aug. 7, 2012) (unpublished order). Only ALJ Mahoney's claims of interference with his decisional independence are at issue here.

rotation "so far as practicable." 5 U.S.C. § 3105. Although administrative law judges are agency employees, the Office of Personnel Management determines their compensation. *See id.* § 5372. And administrative law judges are exempt from agency performance-appraisal systems. *See id.* §§ 4301(2)(D), 4302. An agency may remove, or take certain other specified "adverse actions" against, an administrative law judge only if the Merit Systems Protection Board first determines, after an opportunity for a hearing, that there is good cause for such action. *See id.* § 7521.[2] The Board's decision may be appealed to the Court of Appeals for the Federal Circuit. *See id.* § 7703(a), (b)(1). Other personnel actions that are alleged to violate the merit-systems principles of the Civil Service Reform Act, *see id.* § 2301, or otherwise to be improperly motivated—what the Act calls "prohibited personnel practices," *id.* § 2302—are to be investigated by the Office of Special Counsel. *See id.* § 1214; *Gray v. Office of Pers. Mgmt.*, 771 F.2d 1504 (D.C. Cir. 1985).[3]

---

[2] The term "adverse actions" does not appear in the text of § 7521 but in the heading for chapter 75, in which § 7521 is found. The actions covered under § 7521 are removal, suspension, reduction in grade or pay, and a furlough of 30 days or less. *See* 5 U.S.C. § 7521(b).

[3] A "personnel action" means an appointment; a promotion; a disciplinary or corrective action; a transfer or reassignment; a reinstatement; a restoration; a reemployment; a performance evaluation; a decision concerning pay, benefits, or awards, or under certain circumstances, concerning education or training; a decision to order psychiatric testing or examination; the implementation or enforcement of a nondisclosure policy; and "any other significant change in duties, responsibilities, or working conditions." 5 U.S.C. § 2302(a)(2)(A).

The Act sets forth "prohibited personnel practices"—an agency official may not discriminate against an employee; consider a recommendation regarding a personnel action that is based on

The Act establishes the "exclusive . . . remedial regime for federal employment and personnel complaints," *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 448 (D.C. Cir. 2009), and we have repeatedly held that federal employees—including administrative law judges—"may not circumvent the Act's requirements and limitations by resorting to the catchall [Administrative Procedure Act] to challenge agency employment actions." *Grosdidier v. Chairman, Broad. Bd. of Governors*, 560 F.3d 495, 497 (D.C. Cir. 2009); *see also Filebark v. U.S. Dep't of Transp.*, 555 F.3d 1009 (D.C. Cir. 2009); *Fornaro v. James*, 416 F.3d 63 (D.C. Cir. 2005); *Graham*, 358 F.3d 931; *Gray*, 771 F.2d 1504; *Carducci v. Regan*, 714 F.2d 171 (D.C. Cir. 1983).[4] The Act precludes suit under the Administrative Procedure Act even when the claim concerns "a *type* of personnel action" the Act does not cover—that is, even when the Act provides no relief for the complained-of employment action. *Filebark*, 555 F.3d at 1013 (internal quotation marks omitted).

---

improper factors; coerce political activity or retaliate against an employee for refusing to engage in political activity; obstruct anyone from competing for employment or encourage a candidate to withdraw from competition; grant a preference or advantage not authorized by law; engage in nepotism; retaliate against an employee for whistleblowing or for exercising a grievance or appeal right; knowingly violate the preference rights of a veteran; implement or enforce a nondisclosure policy that does not contain certain specified language; or take any other personnel action that violates laws, rules, or regulations implementing the merit-system principles. *See id.* § 2302(b).

[4] The Act preserves the rights of employees to bring suit under Title VII and other federal anti-discrimination laws, *see* 5 U.S.C. § 2302(d); *Nyunt*, 589 F.3d at 448, and therefore did not preclude ALJ Mahoney's retaliation and hostile-work-environment claims.

ALJ Mahoney recognizes as much, but asserts that the Act does not preclude claims that do not concern "personnel actions." Pointing to the Supreme Court's statement that "certain actions by supervisors against federal employees, such as wiretapping, warrantless searches, or uncompensated takings, would not be defined as 'personnel actions' within the statutory scheme," *Bush v. Lucas*, 462 U.S. 367, 385 n.28 (1983); *see also Stewart v. Evans*, 275 F.3d 1126, 1130 (D.C. Cir. 2002), he asserts that not all workplace claims challenge "personnel actions" within the meaning of the Act. He contends that his claims "are so far afield from the types of claims that are cognizable under the [Act] that the [Act] does not preempt them." Appellant's Reply Br. 22. His claims, he argues, do "'not concern his employment status, compensation, job responsibilities, or even his working conditions.'" *Id.* at 24 (quoting *Mahoney*, 824 F. Supp. 2d at 65). We disagree.

The Act defines "personnel action" to include any "significant change in duties, responsibilities, or working conditions." 5 U.S.C. § 2302(a)(2)(A)(xii). ALJ Mahoney challenges four sets of actions: (1) the selective assignment of cases on the basis of political considerations or the Secretary's perceived interests; (2) the failure to provide docket numbers necessary for the administrative law judges to manage their cases, as well as to provide access to legal-research resources; (3) unauthorized *ex parte* communications between his supervisor and a litigant appearing before him; and (4) the practice of providing the Justice Department with advance warning of notices of election in certain cases. We think these actions affect "working conditions" and thus fall within the scope of a "personnel action" under the Act.

The selective assignment of cases affects the number or type of cases an administrative law judge will receive. That strikes us as a working condition. Moreover, the requirement

that administrative law judges "be assigned to cases in rotation so far as practicable" appears in 5 U.S.C. § 3105, the provision governing the appointment of administrative law judges and providing that they "may not perform duties inconsistent with their duties and responsibilities as administrative law judges." The appointment of an administrative law judge is a "personnel action," *id.* § 2302(a)(2)(A)(i), as is a significant change in "duties" or "responsibilities," *id.* § 2302(a)(2)(A)(xii). This strongly suggests that the assignment of cases is also a personnel action under the Act.

Similarly, the failure to provide docket numbers and the failure to provide access to legal-research resources affect the ability of administrative law judges to do their jobs efficiently and effectively. In that respect, these actions affect working conditions.

It is perhaps less clear that the *ex parte* communications and the advance warning of notices of election concern working conditions. But ALJ Mahoney alleges that these actions interfered with his decisional independence. We believe "working conditions" can and should be read broadly enough to include such actions. The degree of independence of an administrative law judge—the extent to which an administrative law judge may "exercise[] his independent judgment on the evidence before him, free from pressures by . . . officials within the agency," *Butz v. Economou*, 438 U.S. 478, 513 (1978)—certainly sounds like a working condition. Accordingly, to the extent the complained-of actions are alleged to interfere with ALJ Mahoney's decisional independence, they may be said to affect his working conditions.

At one time, the Merit Systems Protection Board took the position that an administrative law judge could be "constructively removed" under 5 U.S.C. § 7521 by agency

actions that have "'a pernicious effect'" on the administrative law judge's "'qualified independence.'" *Sannier v. Merit Sys. Prot. Bd.*, 931 F.2d 856, 858 (Fed. Cir. 1991) (quoting *Doyle*, 29 M.S.P.R. 170, 175 (1985)); *see also* 62 Fed. Reg. 48,449, 48,455 (Sept. 16, 1997) (interim rule) (codifying the *Doyle* rule in 5 C.F.R. § 1201.142).[5] The Board later decided that § 7521 could reasonably be read to apply "only to cases of actual separation from employment" as an administrative law judge, and revised the regulation "to repeal the *Doyle* rule." 70 Fed. Reg. 48,081, 48,081 (Aug. 16, 2005). The Board asserted that under the *Doyle* rule, "an agency would have to first seek the Board's permission, with the opportunity for a full evidentiary hearing, every time it wants to take actions . . . which involve such things as case processing matters and training requirements." *Tunik v. Soc. Sec. Admin.*, 93 M.S.P.R. 482, 492 (2003), *vacated on other grounds*, 407 F.3d 1326 (Fed. Cir. 2005).[6] "We cannot believe," the Board wrote, "that this sort of micromanagement, and the likely slowdown in the agency's work that it would cause, is what Congress intended when it used the word 'removal' in 5 U.S.C. § 7521." *Id.*[7]

---

[5] The Board adopted as final the interim rule. *See* 63 Fed. Reg. 42,685, 42,686 (Aug. 11, 1998).

[6] Tunik, an administrative law judge with the Social Security Administration, alleged that the acting regional chief administrative law judge had interfered with his decisional independence by instructing that one of his decisions, remanding a disability claim to the state agency, be prevented from issuing and by directing that the case be transferred. (The decision ultimately was issued with a minor change.) After ALJ Tunik remanded another case to the state agency on the same grounds, he was informed that the case would be reassigned unless he vacated his order. *See Tunik v. Merit Sys. Prot. Bd.*, 407 F.3d 1326, 1329 (Fed. Cir. 2005).

[7] As ALJ Mahoney points out, in a footnote the Board suggested that "[t]he appellant may have a remedy in federal court for the

Construing the term "working conditions" in 5 U.S.C. § 2302 to include actions alleged to interfere with an administrative law judge's decisional independence, as we do here, on the other hand, raises no such concerns. Rather, it is entirely consistent with the language and structure of the Act to treat an action alleged to interfere with an administrative law judge's decisional independence as a personnel action subject to investigation by the Office of Special Counsel. To do otherwise would "impermissibly frustrat[e]" the "exhaustive remedial scheme" of the Act by permitting, for such actions, "an access to the courts more immediate and direct than the statute provides with regard to major adverse actions," such as removal, suspension, and reduction in pay or grade, *Carducci*, 714 F.2d at 174—more serious actions that are subject to pre-approval by the Merit Systems Protection Board because of their potential to compromise the independence of an administrative law judge.

---

agency's alleged interference with his qualified judicial independence." *Tunik*, 93 M.S.P.R. at 492 n.*. The Board pointed to a district court case, *Chocallo v. Bureau of Hearings & Appeals*, 548 F. Supp. 1349 (E.D. Pa. 1982), *aff'd*, 716 F.2d 889 (3d Cir. 1983) (table), in which an administrative law judge asserted that various agency practices had interfered with her judicial independence in violation of the Administrative Procedure Act. We find no significance in the Board's comment, and it does not alter our conclusion here. The *Chocallo* court did not address whether the Civil Service Reform Act precluded the plaintiff's claims. Indeed, the court did not even mention the Act—perhaps because the plaintiff brought suit in 1977, before the Act was enacted. Nor did the Board consider whether the actions at issue in *Tunik* were "personnel actions" within the meaning of 5 U.S.C. § 2302 or whether the claims would be precluded by the Act. Beyond pointing to a single district court case—to which we owe no deference—the Board offered no reason why judicial review would be available.

We thus conclude that the Civil Service Reform Act precludes ALJ Mahoney's claims of interference with his decisional independence. As a result, the district court lacked jurisdiction over his claims.

*Affirmed.*